## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MADELINE M. COX,<br><br>    Plaintiff,<br><br>    v.<br><br>GRAPHIC COMMUNICATIONS<br>CONFERENCE OF THE<br>INTERNATIONAL BROTHERHOOD OF<br>TEAMSTERS, *et al.*<br><br>    Defendants. | Civil Action No. 08-873 (CKK) |

## MEMORANDUM OPINION
(March 25, 2009)

Plaintiff Madeline M. Cox brings the above-captioned action to challenge the denial of her health care benefits from the Graphic Communications National Health and Welfare Fund (the "Fund"), following her retirement from Graphic Communications Conference of the International Brotherhood of Teamsters (her "Employer").  Plaintiff's three-count Complaint alleges that the denial of her benefits constituted a breach of contract and a violation of Section 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), and that the actions of George Tedeschi, President of her Employer, constituted an interference with her right to benefits in violation of Section 510 of ERISA, 29 U.S.C. § 1140. Plaintiff has asserted these claims against her Employer, Mr. Tedeschi (in his individual and official capacities), the Fund, and the Fund's Board of Trustees.

Defendants have responded with a Motion to Dismiss, or in the alternative, Motion for Summary Judgment, which the Court shall construe as one for summary judgment.  Both parties

have attached to their filings various declarations and exhibits outside the scope of the Complaint

and have submitted statements of material fact pursuant to Local Civil Rule 7(h)(1) ("[e]ach

motion for summary judgment shall be accompanied by a statement of material facts" and "[a]n

opposition to such a motion shall be accompanied by a separate concise statement").[1]  After

thoroughly reviewing the parties' submissions in connection with Defendants' Motion for

Summary Judgment, including the attachments thereto, and all relevant case law and applicable

statutory authority, the Court shall GRANT Defendants' [7] Motion for Summary Judgment, for

the reasons that follow.

## I.  BACKGROUND

Plaintiff worked at her Employer[2] for over thirty-two years as an Executive Secretary to

the President and Executive Assistant to the President.[3]  Defs.' Stmt. ¶ 1.  The Employer

participated in an employee benefits plan administered by the Fund and provided eligible retirees

---

[1] In addition, Plaintiff (as the party opposing Defendants' Motion) has not indicated that she requires discovery to oppose Defendants' Motion.  *See* Fed. R. Civ. P. 56(f) ("[i]f a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may," issue an appropriate order, including the allowance of discovery).  The Court also finds that further supplementation of the record is not necessary to resolve Defendant's Motion.

[2] The Court's use of the term "Employer" includes the Employer's predecessor, the Graphic Communications International Union.

[3] As a preliminary matter, the Court notes that it strictly adheres to the text of Local Civil Rule 7(h)(1).  The Court issued an Order on May 27, 2008, explaining that the Court would "assume facts identified by the moving party in its statement of material facts [were] admitted" unless controverted by the non-moving party.  Thus, in most instances the Court shall cite only to Defendants' Statement of Material Facts ("Defs.' Stmt.") or Plaintiff's Response to Defendants' Stmt. ("Pl.'s Resp. Stmt."), which included additional facts not included in Defs.' Stmt.  The Court shall also cite to Defendants' Response to Pl.'s Resp. Stmt. (Defs.' Resp. Stmt."), as necessary, as well as cite directly to evidence in the record to provide additional information not covered in the parties' Statements.

with Employer-paid health insurance until age sixty-five.  Defs.' Stmt. ¶¶ 5, 8.  On March 6, 2006, Plaintiff informed Mr. Tedeschi, President of the Employer, that she intended to retire as of March 31, 2006, and expected the Employer to continue paying for her health insurance.  *Id.* ¶ 3. Mr. Tedeschi explained that the Employer would not pay for Plaintiff's health insurance because she was retiring at fifty-five years old, *id.* ¶ 2, and "it was the policy of the Employer that health care premiums would not be paid on behalf of employees who left employment prior to age [sixty] . . . ."[4]  *Id.* ¶ 4.

Plaintiff retired on March 31, 2006.  Defs.' Stmt. ¶ 1.  Consistent with Mr. Tedeschi's representations to Plaintiff, the Employer submitted a "Termination and Change Form" to the Fund indicating that Plaintiff retired on March 31, 2006, and advising that her coverage should terminate effective April 1, 2006.[5]  *Id.* ¶ 27.  On April 7, 2006, the Fund sent Plaintiff a "Termination of Health Insurance Coverage" notice informing her that "[she] and [her] spouse/dependents [were] no longer eligible to be covered under the [Fund]" as of April 1, 2006. Defs.' Mot., Ex. B-8 at 1 (4/7/06 Termination of Coverage Notice).

Of central significance to this case is a document called the Summary Plan Description ("SPD"), which the Fund distributes to its participants and which Plaintiff received.  Defs.' Stmt.

---

[4]Although immaterial to resolution of Plaintiff's claims, the Court notes that Plaintiff subsequently sought to appeal this stated policy in a subsequent letter to the General Board of the Employer.  *See* Defs.' Mot., Ex. A-2 at 1 (5/25/06 Letter from Mr. Tedeschi to Plaintiff).  Mr. Tedeschi drafted a letter to Plaintiff indicating that her appeal would not be presented to the Board because "[u]nder the [Employer's] Constitution, only members of the [union] are entitled to appeal actions . . . . to the General Board."  *Id.*

[5] Plaintiff interposes the objection that she did not receive the Termination and Change Form in April 2006, but she does not object to the *relevant* fact that the Employer sent this notice to the Fund in April 2006.  *See* Pl.'s Resp. Stmt. ¶ 27.

¶¶ 21, 22.  The SPD describes specific procedures available to challenge a partial or complete

denial of coverage, which require a plan participant to (1) submit a claim for coverage within one

year of incurred expenses, and if the claim is denied, (2) file an appeal to the Fund's Board of

Trustees within 120 days of the denial:

> **Time Limit for Filing Claims**
>
> All claims must be submitted to the Plan within one year following the date on
> which the expenses were incurred.  No Plan Benefits will be paid for any claim
> not submitted within this period.
>
> **Review Procedure if Your Claim Is Denied**
>
> The Administrator will notify you in writing within 90 days of receipt of the claim
> if payment of your claim is denied in whole or in part.  It will explain the reasons
> why, with reference to the Plan provisions on which the denial was based . . .
>
> You will be told what steps you may take to submit your claim for review and
> reconsideration.
>
> Your request for review or reconsideration must be made in writing to [the Fund],
> within 120 days after you receive notice of denial.

Defs.' Mot., Ex. B-2 at 46-47 (SPD) (emphasis in original omitted).  Although the Fund also

provides participants with a "Plan Document" containing a description of these procedures,

Defs.' Stmt. ¶ 13, Plaintiff did not receive a copy of that document.[6]  *See* Pl.'s Resp. Stmt. ¶ 11;

Defs.' Resp. Stmt. ¶ 11.

On April 2, 2007 (*i.e.*, more than 120 days but less than one year after Plaintiff's health

insurance was terminated), Plaintiff's attorney submitted a "Notice of Claim of Plan Benefits" to

the Fund asking that the Fund to reinstate Plaintiff's insurance coverage.  Pl.'s Opp'n, Ex. B-9 at

---

[6] For this reason, the Court shall focus only the SPD and not the Plan Document for
purposes of this Motion for Summary Judgment.

1 (4/2/07 Letter from G. Bohn to the Fund).  The Fund responded on April 17, 2007, indicating

that Plaintiff was ineligible for coverage under the plan:

> [a]s of April 2006, [Plaintiff] was dropped from the eligibility report provided to
> the Plan by her [Employer].  The [Employer] further notified the Plan that under
> the plan of benefits negotiated between the [Employer] and the collective
> bargaining representative, [Plaintiff] was not entitled to health care benefits
> following her termination of employment.  Further, no premium payments have
> been received on her behalf since that date.

Pl.'s Opp'n, Ex. A-11 at 2 (4/17/07 Letter from M. Ganzglass to G. Bohn).  The letter also stated

that the Fund forwarded Plaintiff's notice "to the [Employer] with a request for an explanation of

the determination that [Plaintiff] was no longer eligible for coverage under the Plan," and that

once the Fund received a response, it would "respond to [the] April 2nd letter [sent by Plaintiff's

attorney]."  *Id.*

The Fund did not respond further.  On June 8, 2007, Plaintiff's attorney sent the Fund a

letter explaining that two months had elapsed and the Fund had not provided a further

explanation.  *Id.*, Ex. A-12 at 1 (6/8/07 Letter from G. Bohn to the Fund).  Plaintiff's attorney

advised the Fund that "[i]n the event no explanation is received in the next sixty (60) days, or if

[Plaintiff's] health benefits are not reinstated, then [Plaintiff] has no alternative but to pursue

other available remedies."  *Id.*  The Fund did not respond to this letter and Plaintiff took no

further action.  Pl.'s Resp. Stmt. ¶ 40.

On January 3, 2008, a medical provider submitted a claim for payment to the Fund in

connection with an office visit by Plaintiff's spouse.  *See* Defs.' Reply, Ex. B-1 at 1 (1/22/08

Explanation of Benefits notice).  On January 22, 2008, an Explanation of Benefits notice was

sent on behalf of the Fund to Plaintiff denying the claim because–as explained previously–she

was no longer eligible for health benefits:

> At the time these services were rendered, this member's coverage was no longer in effect.  Therefore, we are unable to provide benefits for these charges.

*Id.*  The Explanation of Benefits notice also contained a description of the procedures that must be followed to appeal the denial of coverage.  *Id.*, Ex. B-2 at 1 (1/22/08 Reverse Side of Explanation of Benefits letter).

Plaintiff never filed an appeal with the Fund's Board of Trustees within 120 days of receiving (1) the April 7, 2006 Termination of Coverage Notice, (2) the April 17, 2007 Letter indicating that Plaintiff was ineligible for benefits because her health coverage had been terminated, or (3) the January 22, 2008 Explanation of Benefits notice.  Accordingly, the Fund's Board of Trustees has never had the opportunity to address any of the arguments Plaintiff raises in this lawsuit.

Plaintiff filed a three-count Complaint in this Court on May 22, 2008.  Count I alleges that Defendants wrongfully denied Plaintiff her Employer-paid health coverage at the time of her retirement and thereafter in violation of Section 502(a)(1)(B) of ERISA.  Compl. ¶¶ 39-42.  Although Plaintiff's Complaint alleges without elaboration that "Plaintiff exhausted her internal plan remedies," *id.* ¶ 49, Plaintiff clarified in her submissions to the Court that "the Court should find that [Plaintiff's] attorney's letter of April 2, 2007[,] exhausted [Plaintiff's] Plan remedies."  Pl.'s Sur-Reply at 6.  Defendants have moved to dismiss this claim based on Plaintiff's failure to exhaust the plan's administrative remedies.  *See* Defs.' Mot. at 16-19.

Count II alleges that Mr. Tedeschi, individually and in his official capacity, "discriminatorily denied Plaintiff health benefits on the purported ground that she retired prior to

age 60, knowing that other retirees covered by the Plan were receiving such benefits" in violation

of Section 501 of ERISA.  Compl. ¶ 44.  Plaintiff elaborated on Mr. Tedeschi's conduct in her

submissions to the Court:

> [Mr.] Tedeschi disliked and distrusted [Plaintiff] because she had been Executive
> Secretary to James Norton, whom [Mr.] Tedeschi defeated in a bitter union
> election in 2000 . . . [Mr.] Tedeschi exhibited strong personal animus towards
> [Plaintiff] before her retirement.  [Mr.] Tedeschi's personal animus drove the
> decision to stop making contributions to the National Plan thereby causing the
> Plan to deny her health benefits in this case.
>
> * * *
>
> There was widespread disparate treatment and uneven application of the so-called
> 'policy' requiring retirement at age 60.  Eight comparators similarly situated to
> [Plaintiff] received retirement health insurance coverage, even though they retired
> before age 60.

Pl.'s Resp. Stmt. ¶¶ 1, 22 (internal citations omitted).  Defendants have moved to dismiss this

claim based on Plaintiff's failure to raise it within the applicable statute of limitations period.

*See* Defs.' Mot. at 20-24.

Finally, Count III alleges that the Employer breached a contract (which is not identified in

the Complaint) by "wrongly denying [P]laintiff coverage . . . upon her retirement or by wrongly

instructing the [Fund] that plaintiff was not eligible for coverage."  *Id.* ¶ 47.  Defendants have

moved to dismiss this claim based on ERISA preemption, *see* Defs.' Mot. at 25-28, which

Plaintiff has conceded, *see* Pl.'s Opp'n at 34.

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, a party is entitled to summary judgment

"if the pleadings, the discovery and disclosure materials on file, and any affidavits show that

there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c). *See also Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).

Under the summary judgment standard, the moving party bears the "initial responsibility of

informing the district court of the basis for [its] motion, and identifying those portions of the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party must "go

beyond the pleadings and by [its] own affidavits, or depositions, answers to interrogatories, and

admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." *Id.*

at 324 (internal citations omitted).

Although a court should draw all inferences from the supporting records submitted by the

nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary

judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To be material, the

factual assertion must be capable of affecting the substantive outcome of the litigation; to be

genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-

fact could find for the nonmoving party. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C.

Cir. 1987); *Liberty Lobby*, 477 U.S. at 251 (the court must determine "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided

that one party must prevail as a matter of law"). "If the evidence is merely colorable, or is not

sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50

(internal citations omitted). "Mere allegations or denials in the adverse party's pleadings are

insufficient to defeat an otherwise proper motion for summary judgment." *Williams v.*

*Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). The adverse party must do more than simply

"show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, while the movant bears the initial

responsibility of identifying those portions of the record that demonstrate the absence of a

genuine issue of material fact, the burden shifts to the non-movant to "come forward with

'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (citing Fed. R. Civ. P.

56(e)) (emphasis in original).

### III.  DISCUSSION

A.      *Count I: Violation of ERISA Section 501(a)(1)(B)*

As set forth above, Count I of Plaintiff's Complaint alleges that Defendants wrongfully

denied Plaintiff her Employer-paid health coverage at the time of her retirement and thereafter in

violation of Section 502(a)(1)(B) of ERISA.  Compl. ¶¶ 39-42.  Defendants' Motion for

Summary Judgment seeks dismissal of this claim based on Plaintiff's failure to exhaust her

administrative remedies.  *See* Defs.' Mot. at 16-19.

As a preliminary matter, the Court notes that neither Defendants nor Plaintiff apparently

realized when they filed their Motion and Opposition, respectively, that a medical provider

submitted a claim for payment to the Fund in connection with an office visit by Plaintiff's spouse

on January 3, 2008.  Similarly, neither party apparently realized that an Explanation of Benefits

notice was sent on behalf of the Fund to Plaintiff on January 22, 2008, denying the claim because

Plaintiff's health coverage had been terminated effective April 1, 2006.  As a result, Defendants'

Motion and Plaintiff's Opposition focus on whether Plaintiff should have filed an appeal within

120 days of the April 7, 2006 Termination of Coverage notice (which Plaintiff argues did not

trigger the 120-day period because it was a termination and not a denial of a claim) or the April

17, 2007 letter indicating that Plaintiff was ineligible for benefits (which Plaintiff argues was not a "claims denial").  *See* Defs.' Mot. at 16-20; Pl.'s Opp'n at 19-25.

After Plaintiff filed her Opposition, Defendants discovered the January 3, 2008 claim submitted on behalf of Plaintiff's spouse and included it as an attachment to their Reply.  *See* Defs.' Reply,  Ex. B-1 at 1 (1/22/08 Explanation of Benefits notice).  Because Plaintiff did not previously have the opportunity to address issues related to that claim, the Court granted Plaintiff's Motion for Leave to File a Sur-Reply.[7]  Based on the parties' briefing and a review of the communications between Plaintiff (and Plaintiff's attorney) and the Fund, the Court finds that Count I of Plaintiff's Complaint must be dismissed based on Plaintiff's failure to exhaust her administrative remedies.

It is well-established in this district that "plaintiffs seeking a determination pursuant to ERISA of rights under their pension plans 'must . . . exhaust available administrative remedies under their ERISA-governed plans before they may bring suit in federal court.'" *Commuc'ns Workers of Am. v. Am. Telephone & Telegraph Co.*, 40 F.3d 426, 431 (D.C. Cir. 1994) (quoting *Springer v. Wal-Mark Assocs. Grp. Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990)). Administrative exhaustion prevents premature or unnecessary judicial interference with plan administrators:

> Much like the exhaustion doctrine in the context of judicial review of administrative agency action, the exhaustion requirement in the ERISA context serves several important purposes.  By preventing premature judicial interference

---

[7] Plaintiff's Sur-Reply uses the phrase "[a]ssuming [she] even received the document defendants now rely on" to refer to the Explanation of Benefits notice sent on behalf of the Fund to Plaintiff.  *See* Pl.'s Sur-Reply at 2.  Plaintiff does not, however, deny (in a declaration or otherwise) that she received the notice, and the Court notes that the notice is addressed directly to Plaintiff on the face of the document.

with a pension plan's decisionmaking processes, the exhaustion requirement enables plan administrators to apply their expertise and exercise their discretion to manage the plan's funds, correct errors, make considered interpretations of plan provisions, and assemble a factual record that will assist the court reviewing the administrators' actions.  Indeed, the exhaustion requirement may render subsequent judicial review unnecessary in many ERISA cases because a plan's own remedial procedures will resolve many claims.

*Id.* at 432 (internal citation omitted).

There is no dispute that the SPD requires a participant to file an appeal of any denied claim within 120 days, Defs.' Mot., Ex. B-2 at 46-47 (SPD), and that Plaintiff never filed an appeal with the Fund's Board of Trustees as required by the SPD prior to filing this suit.  *See* Defs.' Mot., Ex. B ¶ 36 (Decl. of T. Bauer); Defs.' Reply, Ex. C ¶ 9 (Second Decl. of T. Bauer). Plaintiff offers several reasons to justify or excuse her failure to file an appeal, none of which is persuasive.

First, Plaintiff argued in her Opposition that she did not file an appeal because she did not submit a "claim" that was denied (instead, her health coverage was "terminated"), and thus the 120-day appeal period was not triggered.  *See* Pl.'s Opp'n, Ex. A ¶ 26 (Decl. of M. Cox) ("given the SPD and its supplement, which have a one (1) year limitation requirement for submitting claims, on April 2, 2007, . . . I caused a Notice of Claim of Plan Benefits [] to be filed with the [Fund] by my attorneys . . . At no time did I understand or believe that the 120 day appeal procedure in the SPD applied to my situation because I never had a claim decision to appeal from.").  After realizing that Plaintiff unquestionably did, in fact, file a claim in January 2008, Plaintiff changed her argument and now asserts that she was confused as to the appropriate appeals process.  *See* Pl.'s Sur-Reply at 4 ("[Plaintiff] had no way to know whether she arrived at the 'review and reconsideration' step . . . or was still at the Notice of Claim step . . . Had

11

defendants issued her the mandatory notice from the Plan explaining her appeal rights, her posture would have been more clear to her.").  Plaintiff also guesses that an additional description of the appeals process would have made a difference:  "The Plan Document might have assisted [Plaintiff] in deciphering which limitations period was applicable."  *Id.* at 4.

Ultimately, Plaintiff's arguments fail because the SPD sets forth the applicable appeals procedure which includes both submission of a claim and the filing of an appeal within 120 days of a denied claim.  *See* Defs.' Mot., Ex. B-2 at 46-47 (SPD).  Even if Plaintiff was confused as to *when* she should have filed her appeal, she was on notice that she was required to file an appeal *at some point*.  Plaintiff offers no explanation for why she failed to file an appeal even after receiving the January 22, 2008 Explanation of Benefits notice (which clearly constituted a claim denial), even if she previously did not believe that the Fund's prior communications triggered the 120-day period for an appeal.

Plaintiff also confusingly argues that the Court should consider her attorney's April 2, 2007 letter to have exhausted her plan remedies.  *See* Pl.'s Sur-Reply at 6.  That argument is untenable for two reasons.  First, the letter sent by Plaintiff's attorney must be construed as a claim because it was filed just short of one year after Plaintiff's coverage was terminated.  Thus, as an appeal, it was filed well outside of the 120-day window required by the SPD.  Second, the letter was demonstrably a claim and not an appeal because it was titled "Notice of Claim of Benefits," and Plaintiff herself throughout her briefing has referred to it as a claim.  *See, e.g.*, Pl.'s Sur-Reply at 5-6 (referring to the April 2, 2007 letter and arguing that "the Plan's representatives could have forthrightly advised [Plaintiff] that *her claim* was being denied, and

given her notice of her Plan *appeal rights* at that time") (emphasis added).[8]

Next, Plaintiff argues that her failure to exhaust the Plan's administrative remedies should be excused because "[e]xhaustion would have been futile under the circumstances here."  Pl.'s Opp'n at 26.  Plaintiff's argument is based on her speculation about the Fund's Board of Trustees and the fact that the Employer and Fund shared the same attorney:

> [i]t would have been futile for the [Board of Trustees] to review [Mr.] Tedeschi's unilateral determination that [the Employer] would not contribute premiums for its employee; [Mr.] Tedeschi had usurped their authority.  Moreover, the fact that [Mr.] Tedeschi, the [Employer] and the [Fund] were all represented by the same counsel . . . .demonstrated that it was unlikely the Plan would have acted contrary to [Mr.] Tedeschi's wishes.

Pl.'s Opp'n at 26.[9]

Plaintiff's futility argument fails.  "The general rule in this circuit is that the exhaustion requirement 'may be waived [] only in the most exceptional circumstances.'" *Commuc'ns Workers of Am.*, 40 F.3d at 432 (quoting *Peter Kiewit Sons' Co. v. United States Army Corps. of Eng'rs*, 714 F.2d 163, 168-69 (D.C. Cir. 1983) (internal quotations omitted)).  Consistent with that approach, the D.C. Circuit has advised that "[t]he futility exception is . . . quite restricted and has been applied only when resort to administrative remedies is clearly useless" *Id.* (citation and

---

[8] Plaintiff points out in her Opposition that she "did attempt to appeal [Mr.] Tedeschi's decision not to provide her benefits to the [Employer's] highest body, its General Board, but [Mr.] Tedeschi refused to process her appeal."  Pl.'s Opp'n at 25.  This argument is immaterial because the SPD requires an appeal to the Fund's Board of Trustees, Defs.' Mot., Ex. 2 at 46-47 (SPD), not to the Employer's General Board.

[9] Plaintiff also makes the confusing argument that Mr. Tedeschi "foreclosed the development of any record for review" because "defendants never answered the Notice of Claim . . . thereby foreclos[ing] [Plaintiff] from appealing and obtaining the type of administrative record preferred by the courts required for review."  Pl.'s Opp'n at 27.  The Court finds that the lack of an administrative record is due to Plaintiff's failure to file an appeal with the Board of Trustees, not due to any action by one or more Defendants.

internal punctuation omitted).  Rather than speculating on the outcome if administrative

procedures are pursued, a plaintiff must show that "'it is certain that their claim will be denied . .

. .'"  *Id.* (quoting *Smith v. Blue Cross & Blue Shield United of WI*, 959 F.2d 655, 659 (7th Cir.

1992)).  Accordingly, "[e]ven if one were to concede than an unfavorable decision . . . was *highly*

*likely*, that does not satisfy [the D.C. Circuit's] strict futility standard requiring a *certainty* of an

adverse decision."  *Id.* at 433.

　　In this case, Plaintiff has argued only that a favorable decision by the Fund's Board of

Trustees would have been "unlikely," which fails to meet her burden of showing that filing an

appeal would be "clearly useless."  Courts routinely reject arguments that do not meet the

"clearly useless" standard.  *See, e.g.*, *Hunter v. Metropolitan Life Ins. Co.*, 251 F. Supp. 2d 107,

111 n.4 (D.D.C. 2003) (rejecting the plaintiff's futility argument "given the limited application of

the futility exception" because "plaintiff fails to provide any evidence that completing the appeal

process would be 'clearly useless'").  Equally problematic, however, is the evidence in the record

suggesting that an adverse decision by the Board of Trustees was far from a foregone conclusion.

Plaintiff included as an attachment to her Opposition a memorandum drafted by the Fund's

counsel to Mr. Tedeschi advising him that "coverage is required for retirees at any age and not

those retiring at age 60."  Pl.'s Opp'n, Ex. A-4 at 1 (2/15/06 Mem. from M. Ganzglass to G.

Tedeschi).  Defendants also point out that the Board of Trustees has never had occasion to

address an appeal involving the retirement age issue raised by Plaintiff, which suggests that the

outcome of an appeal to the Board of Trustees would not have been predetermined.  *See* Defs.'

Mot. at 20 n.8 ("[t]he Board of Trustees has never been presented with an appeal addressing an

issue of retiree eligibility for Plan benefits").  Accordingly, Plaintiff's speculation about how the

Board of Trustees would have resolved her appeal is unavailing.

Finally, Plaintiff's argument that sharing a common attorney would have made an appeal futile is undermined by the D.C. Circuit's holding that close relationships between company officers and plan administrators are insufficient to support application of the futility doctrine. *See Commuc'ns Workers of Am.*, 40 F.3d at 433 ("[i]f futility were established on that basis alone, exhaustion of internal administrative remedies would be excused in virtually every case where a pension plan is administered by company's management and where the company has expressed a view as to the meaning of the terms of the plan"). Accordingly, the Court shall grant Defendants' Motion for Summary Judgment as to Count I of Plaintiff's Complaint based on Plaintiff's failure to exhaust her administrative remedies.[10]

### B.    Count II: Violation of ERISA Section 510

Count II of Plaintiff's Complaint is brought under Section 510 of ERISA, which provides, in relevant part:

> [i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C. § 301 *et seq.*], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pensions Plan Disclosure Act.

---

[10] Defendants also moved to dismiss Count I against Mr. Tedeschi and the Employer "because they are not fiduciaries of the Fund." Defs.' Mot. at 12 (quoting Section 502(d)(2) of ERISA, 29 U.S.C. § 1132(d)(2) ("[a]ny money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter"). Because the Court shall dismiss Court I against all Defendants based on Plaintiff's failure to exhaust her administrative remedies, the Court declines to reach this argument.

29 U.S.C. § 1140 (2005).  Section 510 and the applicable enforcement provision, 29 U.S.C. §

1132 (2005), do not provide a specific statute of limitations for actions alleging violations of

Section 510.  Accordingly, the appropriate limitations period is determined by reference to the

state statute of limitations governing cases most analogous to the cause of action asserted by the

plaintiff.  *See North Star Steel Co. v. Thomas*, 515 U.S. 29, 33 (1995).

        Defendants' Motion argues that the Court should borrow the one-year statute of

limitations set forth in the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-

1402.11(a)(1), as the statute that most closely resembles the allegations associated with

Plaintiff's Section  510 claim.  *See* Defs.' Mot. at 21.  The DCHRA is the D.C. statute that

governs claims based on employment discrimination.  *Id.*  Plaintiff's Opposition, in contrast,

argues that the Court should borrow the three-year statute of limitations set forth in D.C. Code §

12-301(7), which governs breach of contract claims.  *See* Pl.'s Opp'n at 31.  According to

Plaintiff, her claim is "based upon the discriminatory interpretation of contractual obligations set

forth in the Plan Documents [and] [c]onsequently . . . is most closely analogous to a breach of

contract claim which has a statute of limitations of three years. . . ."  *Id.*

        The Court agrees with Defendants that the closest analogue to Count II is a discrimination

claim under the DCHRA.  Plaintiff alleges that Mr. Tedeschi denied her Employer-paid health

coverage based on her age, *see* Compl. ¶ 44 ("on the purported ground that she retired prior to

age 60"), a policy that she argues was unevenly applied and motivated by Mr. Tedeschi's

personal animus toward Plaintiff:

        [Mr.] Tedeschi disliked and distrusted [Plaintiff] because she had been Executive
        Secretary to James Norton, whom [Mr.] Tedeschi defeated in a bitter union
        election in 2000 . . . [Mr.] Tedeschi exhibited strong personal animus towards

[Plaintiff] before her retirement.  [Mr.] Tedeschi's personal animus drove the decision to stop making contributions to the National Plan thereby causing the Plan to deny her health benefits in this case.

* * *

There was widespread disparate treatment and uneven application of the so-called 'policy' requiring retirement at age 60.  Eight comparators similarly situated to [Plaintiff] received retirement health insurance coverage, even though they retired before age 60.

Pl.'s Resp. Stmt. ¶¶ 1, 22 (internal citations omitted).  Plaintiff's allegations of "personal animus," "disparate treatment," and "comparators," are the types of allegations one would expect from an employee asserting discriminatory treatment under the DCHRA, which prohibits discriminatory practices based on age or numerous other reasons:

It shall be an unlawful discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based upon the actual or perceived: race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity of expression, family responsibilities, genetic information, disability, matriculation, or political affiliation of any individual:

(1) By an employer. – To fail or refuse to hire, or to discharge, any individual; *or* otherwise to discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment, including promotion; or to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee[.]

D.C. Code § 2-1402.11(a)(1).

While the Court of Appeals for the D.C. Circuit has not directly addressed which statute of limitations period should apply to claims brought under Section 510, this Court has previously applied the one-year limitations period under the DCHRA.  *See Watts v. Parking Mgmt.*, 2006 U.S. Dist. LEXIS 12873 at *9-*18 (D.D.C. Mar. 12, 2006) (Kollar-Kotelly, J.), *aff'd* 210 Fed. App'x 13 (2006).  In addition to that decision, virtually every other jurisdiction addressing the

issue (as cited in *Watts*) has applied the statute of limitations for wrongful discharge or

employment discrimination to Section 510 claims.  *See, e.g.*, *Sanberg v. KPMG Peat Marwick,*

*LLP*, 111 F.3d 331, 336 (2d Cir. 1997) (a Section 510 claim is most analogous to claims

involving wrongful discharge to prevent an employee from obtaining workers' compensation

benefits); *Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 843-46 (3d Cir. 1987) (holding that the

district court did not err in determining that a Section 510 action most closely resembles action

for employment discrimination), *cert. denied*, 484 U.S. 979 (1987); *McClure v. Zoecon, Inc.*, 936

F.2d 777, 778 (5th Cir. 1991) (affirming district court's decision to apply the statute of

limitations applicable to "wrongful discharge and employment discrimination claims" to a

Section 510 action); *Leemis v. Med. Servs. Research Group, Inc.*, 75 Fed. Appx. 986, 987-88 (6th

Cir. 2003) (per curium) (noting that "neither party on appeal disputes the conclusion of the

district court that Leemis's federal complaint 'is most analogous to a wrongful discharge or

retaliatory discharge claim'"); *Teumer v. Gen. Motors Corp.*, 34 F.3d 542, 549-50 (7th Cir. 1994)

(the statute of limitations applicable to retaliatory discharge actions is applicable to Section 510

claims); *Burrey v. Pac. Gas & Elec. Co.*, 159 F.3d 388, 396 (9th Cir. 1998) (affirming district

court that applied the statute of limitations period for wrongful discharge to a Section 510 claim);

*Held v. Mfrs. Hanover Leasing Corp.*, 912 F.2d 1197, 1205 (10th Cir. 1990) (agreeing with

district court that claim most analogous to a Section 510 action is a claim for employment

discrimination); *Byrd v. MacPapers, Inc.*, 961 F.2d 157, 160 (11th Cir. 1992) (concluding that a

Section 510 claim was most closely analogous to a claim for retaliatory discharge for filing a

workers' compensation claim).  In addition, the D.C. Circuit in *Andes v. Ford Motor Co.* cited

with approval the decisions from some of these jurisdiction that apply the state statute of

limitations for wrongful discharge or employment discrimination to Section 510 claims. *See* 70

F.3d 1332, 1337 n.7 (D.C. Cir. 1995) ("When confronted with the question of the appropriate

limitations for § 510, the courts of appeals have often applied a state's wrongful discharge or

employment discrimination statute.") (citing cases).

Plaintiff's attempt to marshal contrary authority is unpersuasive. Plaintiff cites *Connors*

*v. Hallmark & Son Coal Co.*, 935 F.2d 336, 341 (D.C. Cir. 1991) for the proposition that "[i]n

benefits situations such as this one, courts in the this [sic] Circuit analogize an alleged denial of

benefits to a breach of contract claim, which has a statute of limitations of three years under

District of Columbia law." Pl.'s Opp'n at 32. Plaintiff also cites *Walker v. Pharmaceutical*

*Research & Manufacturers of America*, 439 F. Supp. 2d 103, 107 (D.D.C. 2006), for the same

proposition. *Id.* As even a cursory reading of *Connors* reveals, that case involved claims

brought under Sections 502 and 515 of ERISA (not Section 510), and involved a suit by trustees

of a plan against certain companies for failing to report and pay pension fund contributions (not a

suit brought by a plan participant against her direct supervisor and employer). *Connors*, 935 F.2d

at 337. *Walker* is even farther afield because, in that case, the court did not select between a one-

year or a three-year statute of limitations period because Plaintiff brought her claim

approximately 16 *years* after her claim accrued, making it untimely under either statute of

limitations. *Walker*, 439 F. Supp. 2d at 109.

As supported by the avalanche of authority above, the Court finds that the DCHRA is the

statute that is the closest analogue to Plaintiff's claim under Section 510 of ERISA. There is a

one-year statute of limitations period for such claims. *See* D.C. Code § 2-1403.16(a) ("[a]

private cause of action pursuant to this chapter shall be filed in a court of competent jurisdiction

within one year of the unlawful discriminatory act, or the discovery thereof"). The one-year

limitations period is strictly construed and runs from the date of the adverse action or after

discovery of the unlawful action. *Brown v. NAS*, 844 A.2d 1113, 1117 (D.C. 2004). In this case,

Plaintiff discovered Mr. Tedeschi's discriminatory treatment at least by March 31, 2006 (the date

of her retirement), as reflected in the memorandum that she drafted that describes her interactions

with Mr. Tedeschi and the decision to terminate her Employer-paid health coverage. *See* Defs.'

Mot., Ex. B-1 (Mem. from M. Cox to the General Board). Because Plaintiff filed suit on May

22, 2008, she has raised this claim well beyond the one-year statute of limitations period.

Accordingly, the Court shall grant Defendants' Motion for Summary Judgment with respect to

Count II of Plaintiff's Complaint as time-barred by the applicable one-year statute of limitations.

  C.  *Claim III: Breach of Contract*

  Count III of Plaintiff's Complaint alleges that the Employer breached a contract by

"wrongly denying [P]laintiff coverage . . . upon her retirement or by wrongly instructing the

[Fund] that plaintiff was not eligible for coverage." *Id.* ¶ 47. Defendants' Motion argues that a

breach of contract claim predicated on any of the Plan Documents such as the SPD is preempted

by ERISA. *See* Defs.' Mot. at 25-28. Defendants are correct. *See Aetna Health Inc. v. Davila*,

542 U.S. 200, 208-13 (2004) ("any state-law cause of action that duplicates, supplements, or

supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to

make the ERISA remedy exclusive and is therefore pre-empted"). In her Opposition, Plaintiff

concedes the point. *See* Pl.'s Opp'n at 34 ("Plaintiff concedes that the claim for breach of

contract stated in Count 3 are the same as the claims for denial of benefits pled in Count 1 arising

under ERISA § 502(a)(1)(B)"). *See also* Defs.' Reply at 2 n.1 ("[i]n her Opposition, [Plaintiff]

voluntarily withdrew her breach of contract claim, Count III of her Complaint"). Accordingly,

Count III shall be dismissed on the merits and as conceded.

## IV.  CONCLUSION

For the reasons set forth above, the Court shall GRANT Defendants' [7] Motion for

Summary Judgment.  This case shall be dismissed in its entirety.  An appropriate Order

accompanies this Memorandum Opinion.

Date: March 25, 2009

                                         _/s/_____
                                         **COLLEEN KOLLAR-KOTELLY**
                                         United States District Judge